IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MAJESTIC BUILDING MAINTENANCE, INC.**<br>545 Metro Place South<br>Suite 100<br>Dublin, Ohio 43017<br><br>  Plaintiff,<br><br>v.<br><br>**HUNTINGTON BANCSHARES INCORPORATED dba THE HUNTINGTON NATIONAL BANK**<br>c/o CT Corporation System<br>1300 East Ninth Street<br>Cleveland, OH 44114<br><br>  Defendant. | CASE NUMBER: 2:15-cv-3023<br><br>DISTRICT JUDGE:<br><br>MAGISTRATE JUDGE:<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Majestic Building Maintenance ("Plaintiff" or "Majestic"), individually and on behalf of all others similarly situated, institutes this action against Defendant Huntington Bancshares Incorporated dba The Huntington National Bank ("Huntington") upon its personal knowledge, the investigation of its counsel, and on information and belief as follows:

## INTRODUCTION

1.  Plaintiff is one of the many victims of Huntington's refusal to refund monies paid out of its business customers' bank accounts that were not authorized. Here, even after timely notifying Huntington of errors regarding forged and fraudulent payment and check activity, Huntington refused to reimburse Plaintiff in accordance with its legal obligations under the Uniform Commercial Code ("UCC").

1

2. Huntington conveniently modifies the UCC's default rules requiring it to exercise good faith and ordinary care in properly charging customers' accounts in order to deceitfully pass liability onto those customers through provisions of its business account agreements.

3. More specifically, Huntington's disclosures given to new business account customers refutes any obligation to its customers for items wrongfully paid out of their accounts if customers do not "avail" themselves to certain, unspecified fraud-protection products purportedly offered by Huntington.

4. As a result, Huntington disclaims all responsibility under the UCC so that it does not have to pay back its customers for money it improperly pays out of customers' bank accounts.

5. Huntington, as the drawee bank, has all the power and control in paying a forged check or other unauthorized item, and rather than taking steps to protect its customers, it is dumping all the cost and loss onto its powerless customers by unlawfully shifting all responsibility to them. Due to Huntington's unfair business practices, Plaintiff and other business account customers are out hundreds to thousands of dollars through no fault of their own.

6. By craftily putting all liability onto its unknowing customers, Huntington ignores its duties under the UCC to its own benefit and to the detriment of its customers that have timely noticed and advised Huntington of errors on their accounts. Huntington's actions are improper and unreasonable.

7. This action is thereby commenced by Plaintiff, by and through its attorneys, for a declaratory judgment, injunctive relief, and damages arising out of Huntington's systematic practice of violating the UCC by (1) failing to reimburse business account customers after

improperly paying checks out of accounts that were forged or otherwise unauthorized, and (2) relying on its one-sided business account agreements as a way of entirely avoiding liability and responsibility to its customers.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class of plaintiffs is a citizen of a state different from Huntington.

9. The Court has personal jurisdiction over Huntington because it is an Ohio resident and has registered as an Ohio corporation with the Ohio Secretary of State. Huntington held Plaintiff's checking account, and the bank accounts of other Class Members, in this judicial district.

10. Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because Huntington is subject to this Court's personal jurisdiction.

## PARTIES

11. Plaintiff Majestic Building Maintenance, Inc. is a company specializing in commercial cleaning services for businesses. Majestic's corporate headquarters are located in Dublin, Ohio, which is within this Court's jurisdiction.

12. Majestic is and was a "customer" within the meaning of § 4-104(5) of the UCC at all times relevant to this Complaint.

13. Defendant Huntington Bancshares Incorporated, whose banking affiliate does business as The Huntington National Bank, is a Maryland corporation with its principal place of business in Columbus, Ohio. Huntington's headquarters are located at Huntington Center, 41 South High Street, Columbus, Ohio 43287, which is within this Court's jurisdiction. Huntington also regularly conducts business in this District and throughout Ohio, Michigan, Pennsylvania, Indiana, West Virginia and Kentucky.

14. According to the Federal Deposit Insurance Corporation ("FDIC"), Huntington had $35.6 billion on deposit in Ohio as of June 30, 2015, making it the third largest bank in the state.

15. At all times relevant to this Complaint, Huntington is and was a "bank" within the meaning of § 4-105(1) of the UCC.

16. At all times relevant to this Complaint, Huntington is and was also a "payor bank" within the meaning of § 4-105(3) of the UCC.

### **THE UCC**

17. Banks are bound by the regulations of the UCC, which has historically placed the responsibility for detecting forgery on the bank.

18. Article 4 of the UCC governs both a bank's duties in collecting checks for payment as well as its duties to its customers.

19. In Ohio, the contractual relationship between a bank and its customer, and Article 4 of the UCC, is implemented through O.R.C. 1304.01 to 1304.40.[1]

---

[1] Huntington's Master Services Agreement, which was given to Plaintiff at the time he opened his bank account, includes Rules and Regulations for Business Accounts and is governed by the laws of the State of Ohio (except to the extent preempted by federal law). *See* Exhibit A at p. 3, Section 11. Article 4 of the UCC has also been adopted, in relevant part, by each state in which Huntington conducts business. *See* Mich. Comp. Laws § 440.4101 to 440.4504; Pa. Cons. Stat. § 4101 to 4504; Ind. Code § 26-1-4-101 to 26-1-4-504; W.Va. Code § 46-4-101 to 46-4-504; Ken. Rev. Stat. § 355.4-101 to 355.4-504.

20. Section 4-401 of the UCC provides that a bank can charge an item to a customer's account only if it is "properly payable."[2]

21. Comment 1 to Section 4-401 provides that any check that is not authorized by the drawer is not "properly payable." In fact, Comment 1 specifically states that "[a]n item containing a forged drawer's signature or forged indorsement is not properly payable."[3]

22. Therefore, it is a cardinal rule under the UCC that a payor bank, like Huntington, may only debit a customer's account for checks that are properly payable, and a check bearing a forged endorsement is not properly payable.

23. Although Section 4-103 of the UCC also allows for Article 4's provisions to be varied by agreement between a customer and the bank, the bank cannot disclaim good faith or ordinary care.[4]

24. The parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.[5]

25. As further stated herein, Huntington changes the default rules of UCC Section 4-401 by adding language to its business account agreements that disclaims all responsibility for paying out checks that were forged or otherwise not properly payable.

## FACTUAL BACKGROUND

26. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

27. In or around November 2010, Plaintiff opened a business checking account with Huntington.

---

[2] O.R.C. § 1304.30(A).
[3] *Id*. cmt. 1 (1990).
[4] O.R.C. § 1304.03(A)
[5] *Id*.

5

28. At that time, Plaintiff received a "Master Services Agreement" ("Agreement") that contained Rules and Regulations for Business Accounts. A true and accurate copy of the Agreement Plaintiff received is attached hereto as <u>Exhibit A.</u>

29. At all times relevant to this complaint, Luther McNeil ("Mr. McNeil"), President of Majestic, was the only authorized signatory on the account.

30. Mr. McNeil was not given a signed copy of the Agreement, nor was he advised in detail regarding the Agreement.

31. In fact, Mr. McNeil went through the entire process of opening the business checking account offsite at a computer repair shop, with the assistance of a banking representative from the Lancaster, Ohio Huntington branch, after he was approached to sign up for a free checking account.

32. Nothing regarding any kind of fraud prevention or detection was presented to him at the time he opened his account.

33. Following receipt of Plaintiff's new checking account and routing numbers, Mr. McNeil ordered hologram checks from a third-party check company to use in Plaintiff's business operations, which he did as a protective measure to avoid fraud in Plaintiff's account.

34. An example of a valid, authorized, properly paid check from Plaintiff's account is attached hereto as <u>Exhibit B</u>.

35. In or around November 24, 2014, upon review of its account online, Mr. McNeil noticed that checks had been cleared from Plaintiff's account that were not authorized.

36. In fact, Mr. McNeil recognized that four checks totaling $3,973.96 were debited from Plaintiff's account on November 24, 2014. True and accurate copies of these checks are attached as <u>Exhibit C</u>.

37. Each unauthorized check was made out to an unknown person named Latasha McCalla in Cleveland, Ohio.

38. The fraudulent checks did not contain the hologram that Plaintiff's typical checks included, nor were the check numbers part of the standard sequence of check numbers typically used in its account. *See* Ex. B and C.

39. Instead, each unauthorized check's number was duplicative of checks previously properly paid by Huntington just weeks earlier.

40. Each unauthorized check also did not have the Huntington logo at the top center, and Plaintiff's address was located directly under its name instead of to the right of the company name/logo. *See* Ex. B. and C.

41. Mr. McNeil's signature was also forged and not placed on the checks by him.

42. Mr. McNeil immediately contacted Huntington on November 24, 2014 on Plaintiff's behalf to inform Huntington of the fraudulent activity on Plaintiff's account and request Plaintiff's account be reimbursed fully.

43. Mr. McNeil filled also out all paperwork requested by Huntington regarding his fraud complaint, including submitting a police report he filled out with the Powell Police Department and a supporting affidavit detailing the fact the signature on the unauthorized checks must have been forged.

44. A few weeks letter, Plaintiff received a letter from Huntington informing it that "reasonable care was not used in declining to use [Huntington's] Check Positive Pay/Reverse Positive Pay services, which substantially contributed to the making of the forged item(s)." A true and accurate copy of this letter is attached as <u>Exhibit D</u>.

45. That is, Huntington told Plaintiff that because Plaintiff did not enroll in or purchase Huntington's "Check Positive Pay/Reverse Positive Pay" product, it would not be honoring its obligations under the law to pay a check and debit Plaintiff's account only as directed by Plaintiff.

46. Huntington's letter attached as Exhibit D further advised Plaintiff to close its account and open a new one.

47. Confused as to Huntington's response, Mr. McNeil contacted an attorney to assist Plaintiff in its efforts to be refunded for money Huntington paid an apparent thief using clearly unauthorized checks.

48. Plaintiff's attorney sent Huntington a letter on December 15, 2014, again requesting the money improperly paid out of its account be refunded. A true and accurate copy of this letter is attached as Exhibit E.

49. Huntington did not respond to the aforementioned letter.

50. Plaintiff's attorney subsequently submitted complaints to both the Federal Reserve and the FDIC on Plaintiff's behalf on or about February 13, 2015. True and accurate copies of the receipt confirmations from the Federal Reserve and FDIC are attached as Exhibit F.

51. As a result of the complaints submitted to the Federal Reserve and FDIC, the Office of the Comptroller of the Currency ("OCC") was contacted to further address the situation.

52. The OCC contacted Huntington regarding Plaintiff's fraud claim, and as a result, Plaintiff finally received the attached letter from Huntington dated March 17, 2015. Exhibit G (enclosures omitted).

53. Huntington's March 17, 2015 letter simply enclosed its prior letter from December 15, 2014 and further stated that within the Rules and Regulations for Business Accounts (found in the Agreement), Huntington has "available certain products designed to discover or prevent unauthorized transactions," which "You agree that if your account is eligible for those products and you choose not to avail yourself of them, then we will have **no liability** for any transaction that occurs on your account that those products were designed to discovery or prevent, nor will we have any duty to re-credit your account for any such losses." Ex. G and Ex. A. at p. 18 (emphasis added).

54. However, the Agreement does not offer or discuss Check Positive Pay/Reverse Positive Pay services. Ex. A.

55. Plaintiff also received a letter directly from the OCC, dated April 15, 2015, stating because Plaintiff's dispute involved provisions of its contract with Huntington, it could not "intercede in a private party situation regarding the interpretation or enforcement of" Plaintiff's contract. A true and accurate copy of the OCC letter is attached as <u>Exhibit H</u> (enclosure omitted).

56. The OCC's letter further stated that any issues remaining were a "factual dispute" between Plaintiff and Huntington, and the OCC would be going beyond its authority to assist any further. Ex. H.

57. As of today, Plaintiff is still without the nearly $4,000 stolen from its account, and it is Huntington's position that it does not have to bear any of the loss, despite being the party with complete control over the processing of forged checks from Plaintiff's account.

58. Huntington has disclaimed all responsibility under the law from any loss incurred by Plaintiff purportedly due to a clause buried in the Agreement.

\*\*\*

59. Huntington has a uniform set of policies and/or procedures dealing with business accounts, including Plaintiff's account.

60. Huntington's Agreement given to new business account customers refutes any obligation to its customers for items wrongfully paid out of their accounts under the law if customers do not "avail" themselves to certain, unspecified fraud-protection products purportedly offered by Huntington.

61. Under the UCC, a check bearing a forged drawer's signature is not "properly payable" and, if the bank pays the check, the bank is generally liable to its customer.

62. Under the UCC, Huntington has a duty to repay its customers, and Huntington has been avoiding that duty by disclaiming all responsibility through its Agreement.

63. Although Huntington has a right to vary provisions of the UCC by agreement, Huntington cannot disclaim its responsibility to exercise ordinary care. This is exactly what Huntington is doing.

64. In this case, and contrary to the law, Huntington paid out forged checks which were not authorized by Plaintiff or its President, Mr. McNeil.

65. As a result, Plaintiff has lost nearly $4,000 by no fault of its own but purportedly because it did not use Huntington's specific Check Positive Pay services.

66. Huntington's refusal to refund money back to Plaintiff and other business account customers because they did not use "reasonable care" in declining to use its fraud services is unfair, unreasonable, and contrary to the UCC.

67. If the standard of ordinary care Huntington is prescribing by way of the Agreement does not ensure that payments made by it are actually at the direction of the

customers, then Huntington holds no duty to perform ordinary care at all, which is manifestly unreasonable and unlawful.

68. Huntington's conduct described herein constitutes a violation of Section 4-401 of the UCC, O.R.C. § 1304.30(A), which provides that a bank may only charge against the account of a customer for an item that is properly payable.

69. Huntington's conduct described herein also constitutes a violation of Section 4-103 of the UCC, O.R.C. § 1304.03(a), which provides that a bank cannot disclaim ordinary care and that parties may determine by agreement by which a bank's responsibility is to be measured if those standards are not manifestly unreasonable.

70. As a result, Plaintiff seeks Huntington be held strictly liable for losses sustained by Plaintiff and other similarly situated business account customers.

## CLASS ACTION ALLEGATIONS

71. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

72. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

73. Plaintiff seeks to represent a six-state class of the following business entities, subject to amendment as appropriate:

> All Huntington business account holders who experienced a financial loss due to Huntington paying items that were not "properly payable."

Collectively, all of these business entities will be referred to as the "Class Members." Plaintiff is a member of the "Class."

74. Excluded from the Class are Huntington and any entities in which Huntington has a controlling interest, Huntington's agents and employees, Huntington's counsel and their

families, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, counsel representing any party and their immediate families, and claims for personal injury, wrongful death and/or emotional distress.

75. Plaintiff does not know the exact number of members of the Class, but Plaintiff reasonably believes the other Class Members number at least in the thousands.

76. Plaintiff and all members of the Class have been harmed by the acts of Huntington.

77. This Complaint seeks injunctive relief, declaratory relief and money damages.

78. The joinder of all Class Members is impracticable due to the size of the Class and relatively modest value of each individual claim.

79. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

80. Further, the other Class Members can be identified easily through records maintained by Huntington and/or its agents.

81. There are well defined, identical questions of law and fact affecting all parties.

82. The questions of law and fact involving the class claims predominate over questions which may affect individual Class Members.

83. Such common questions of law and fact as to the Class include, but are not limited to, the following:

   a. Whether Huntington charged business accounts items that were not properly payable;

   b. Whether Huntington had a right to pass liability onto customers imposed on it by Article 4 of the UCC;

   c. Whether Huntington's Agreement with the Class Members expressly obligated Class Members to obtain Check Positive Pay and/or other purported fraud protection services before Huntington would pay for items paid out of Class Members' accounts that were not "properly payable";

d. Whether it is manifestly unreasonable for Huntington to insist Plaintiff and the Class Members enroll in Check Positive Pay or any other fraud detection services before Huntington will fulfill its obligations under Article 4 of the UCC;

e. Whether Huntington's business practice of disclaiming liability under the UCC for making final payments on items which are not "properly payable" is manifestly unreasonable; and

f. Whether the Class Members are entitled to a refund of all of the money paid out of their accounts by Huntington.

84. As a business that was a Huntington business account customer and had Huntington refuse to reimburse it for the loss of fraudulent items, Plaintiff asserts claims that are typical of each Class member.

85. Further, Plaintiff will fairly and adequately represent and protect the interest of the Class.

86. Plaintiff has retained qualified counsel experienced in handling class action claims and complex federal litigation.

87. A class action is the superior method for the fair and efficient adjudication of this controversy.

88. Class-wide relief is essential to compel Huntington to stop disclaiming good faith and ordinary care by placing all of its liability on its customers.

89. The interest of the Class members in individually pursuing claims against Huntington is slight because damages for an individual action are relatively small for a regional bank with over $69 billion in assets (the 33rd largest bank holding company in the country)[6] and are therefore not likely to deter Huntingtin from engaging in the same behavior in the future.

---

[6] FDIC, Data as of 2Q 20015.

90. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the violations at issue are subject to generalized proof and applicable to the Class as a whole.

91. Huntington has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect the Class as a whole appropriate.

92. Moreover, on information and belief, Plaintiff alleges that the violations complained of herein are substantially likely to continue in the future if an injunction is not entered and Huntington is not forced to change its unfair and unreasonable business practices.

## CAUSE OF ACTION

## COUNT I

## VIOLATION OF SECTION 4-401 OF THE UCC, O.R.C. § 1304.30

93. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

94. Four fraudulent checks totaling $3,973.96 were debited from Plaintiff's account on or around November 24, 2014. Exhibit C.

95. The four checks attached as Exhibit C were forged, altered, or otherwise unauthorized.

96. Pursuant to the UCC and Ohio Revised Code, Huntington was authorized to charge only properly payable items against Plaintiff's account.

97. Forged and altered checks are not properly payable.

98. The four checks attached as Exhibit C were not properly payable.

99. Huntington breached its obligation to Plaintiff under the UCC when it made unauthorized payments and charged $3,973.96 against Plaintiff's account upon a fraudulent presentment of the altered checks.

100. Huntington had sole and absolute power at the time of presentment to decide whether to cash/pay the checks.

101. As a direct and proximate result of Huntington's unauthorized payments, Plaintiff sustained actual damages to be determined at trial, and which include but are not limited to $3,973.96.

102. Huntington is required to at least re-credit Plaintiff's account in the amount of the items that were not properly payable.

## COUNT II

### VIOLATION OF SECTION 4-103(a) OF THE UCC, O.R.C. § 1304.03

103. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

104. Huntington's business account agreements state, "You agree that if your account is eligible for [products designed to discover or prevent unauthorized transactions] and you choose not to avail yourself of them, then we will have **no liability** for any transaction that occurs on your account that those products were designed to discover or prevent, nor will we have any duty to re-credit your account for any such losses." (emphasis added)

105. Huntington paid $3,973.96 out of Plaintiff's account for unauthorized checks that were obviously altered, out of sequence, and did not match Plaintiff's typical checks.

106. Under the UCC, a bank cannot disclaim its responsibility for its lack of good faith or failure to exercise ordinary care.

107. Also under the UCC, the standards to which a bank's responsibility is to be measured cannot be manifestly unreasonable.

108. Here, Huntington disclaimed its responsibility to exercise good faith and ordinary care by incorporating terms and standards into its business account agreements that unreasonably shifts all liability to its customers, when it is the party with the complete control over whether to cash such checks.

109. As a result, Huntington disclaimed all ordinary care in preventing unauthorized transactions, in violation of 4-103(a) and O.R.C. 1304.03(a).

110. Huntington also incorporated terms into the Agreement that create a standard by which Huntingtin's responsibility is to be measured is manifestly unreasonable, in violation of 4-103(a) and O.R.C. 1304.03(a).

111. As a direct and proximate result of Huntington's unauthorized payments, Plaintiff sustained actual damages to be determined at trial, and which include but are not limited to $3,973.96.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class Members the following relief against Defendant:

A. Injunctive relief prohibiting such further unlawful conduct by Defendant in the future;

B. A declaratory judgment declaring Defendant violated the law and further declaring the rights and relations of the parties;

C. An award of each Class Member's maximum damages resulting from Defendant's unlawful conduct, including interest;

D. An award of treble damages for Defendant's unlawful conduct;

E. An award of punitive damages for Defendant's unlawful conduct;

F. An award of attorney's fees and costs to counsel for Plaintiff and the other Class Members;

G. An order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding the Plaintiff a proper representative of the Class, and appointing the lawyers representing Plaintiff as counsel for the Class; and

H. Such other relief as the Court deems just and proper.

Dated: November 20, 2015

        Respectfully submitted,

        */s/ Bridget M. Wasson*
        Troy J. Doucet, Trial Counsel (0086350)
        Bridget M. Wasson (0084457)
        DOUCET & ASSOCIATES CO., LPA
        700 Stonehenge Parkway, Suite 2B
        Dublin, OH 43017
        PH: 614-944-5219
        FAX: 818-638-5548
        Email: Troy@TroyDoucet.com
        Email: Bridget@TroyDoucet.com

        *Attorneys for Plaintiff and the Proposed Class*

## JURY TRIAL DEMANDED

Plaintiff demands that all claims and issues be tried to a jury.

        */s/ Bridget M. Wasson*
        Bridget M. Wasson (0084457)