IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Majestic Building Maintenance, Inc.,

      Plaintiff,                                                Case No: 2:15-cv-3023

      v.                                                       Judge Graham

Huntington Bancshares Inc. dba
The Huntington National Bank.

      Defendant.

<u>Opinion and Order</u>

Plaintiff Majestic Building Maintenance, Inc. brings this putative class action against defendant Huntington National Bank.  Majestic alleges that Huntington violated Ohio's version of the Uniform Commercial Code by failing to refund monies paid out of Majestic's business checking account on four unauthorized checks.  <u>See</u> Ohio Rev. Code § 1304.30; U.C.C. § 4-401.

This matter is before the court on Huntington's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Huntington argues that under the terms of the Master Services Agreement governing Majestic's business account, the risk of loss for unauthorized checks was placed on Majestic.  The court agrees and grants the motion to dismiss.

**I.**      **Background**

Majestic is an Ohio corporation which specializes in commercial cleaning services. Huntington National Bank has its principal place of business in Columbus, Ohio.  The complaint alleges that subject matter jurisdiction exists under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

In November 2010, Majestic opened a business checking account with Huntington.  The complaint alleges that Majestic received a Master Services Agreement at the time the account was opened.  The Agreement, which is attached the complaint, contains a section of "Standard Terms of Conditions" and a section of "Rules and Regulations for Business Accounts."

Within the Rules and Regulations, the Agreement provides:

> [W]e [Huntington] have available certain products designed to discover or prevent unauthorized transactions, including unauthorized checks and ACH debits, forgeries, and alterations (all such activities referred to as "fraud").  While no such product is

1

> foolproof, we believe that the products we offer will reduce the risk of loss to you from fraud. You agree that if your account is eligible for those products and you choose not to avail yourself of them, then we will have no liability for any transaction that occurs on your account that those products were designed to discover or prevent, nor will we have any duty to re-credit your account for any such losses.

Master Services Agr. at PAGEID #35.

Luther McNeil is Majestic's President and the only authorized signatory on the account. On November 24, 2014, McNeil was reviewing the account online and noticed that unauthorized checks had been cleared from the account on that same day. Upon examination, McNeil found that four checks totaling $3,973.96 had been debited from the account. Each check contained a forgery of his signature and each one was made payable to an individual who was unknown to McNeil or Majestic. The forged checks did not feature the hologram, the Huntington logo or the address format that appeared on Majestic's checks, nor did they conform to the check number sequence of Majestic's account.

McNeil immediately contacted Huntington about the forged checks and filled out paperwork for a fraud complaint and a request for reimbursement. Huntington denied his request for reimbursement on the grounds that he had not enrolled in Huntington's Check Positive Pay/Reverse Positive Pay service. Check Positive Pay is a program or service by which the customer, at the time it issues a check, transmits to the bank a record of the check number and amount. See generally Uniform Laws Annotated, U.C.C. Forms & Materials, § 4.3.5 Form 1, Pt. 2. The bank then compares each presented check against the record submitted by the customer. Id. If a presented check does not match the information provided by the customer, the bank will classify it as an "exception check" and provide notice to the customer, who then will have an opportunity to either authorize payment of the exception check or to dishonor it. Id.; see also Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond, 338 F.3d 318, 320 (4th Cir. 2003) ("Positive Pay allows a paying bank to verify check numbers and amounts by comparing them to checks issued by the drawer."); J. Walter Thompson, U.S.A., Inc. v. First BankAmericano, 518 F.3d 128, 135 (2d Cir. 2008) (same).[1]

---

[1] "Reverse positive pay is similar to positive pay, but the process is reversed, with the bank's customer, not the bank, maintaining the list of checks issued. When checks are presented for payment the issuer's bank prepares a file of the checks, account numbers, check numbers, and dollar amounts and sends the file to the customer. The customer then compares the information to its internal records. The bank is notified which checks to pay or reject." Uniform Laws Annotated, U.C.C. Forms & Materials, § 4.3.5 Form 1, Authors' Cmt.

Following Huntington's denial of the request for reimbursement, Majestic filed this action. Majestic alleges that Huntington violated § 4-401 of the U.C.C., which provides for the default rule that a customer is not liable for a check which is not properly payable. See O.R.C. § 1304.30(A). Majestic further alleges that Huntington violated § 4-103(a) of the U.C.C. because it breached its duty of good faith and ordinary care by attempting to contractually shift liability for forged checks to a customer. See O.R.C. § 1304.03(A). The complaint also contains class allegations. Majestic seeks to represent a six-state class of Huntington business accounts holders who suffered a financial loss from Huntington making payments out of their accounts for items which were not properly payable. The complaint alleges that Huntington has violated the U.C.C. by attempting to shift liability for unauthorized checks upon business account customers unless they enroll in Check Positive Pay, Reverse Positive Pay or a similar fraud detection service.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Discussion**

As noted above, Ohio law adopts the U.C.C. default rule that a customer is not liable for the loss associated with unauthorized checks. See O.R.C. § 1304.30(A); U.C.C. §4-401(a); Nat'l City Bank v. Rhoades, 150 Ohio App. 3d 75, 85, 779 N.E.2d 799, 807 (Ohio Ct. App. 2002) ("A bank that pays an item against a customer's account that is not properly payable is required to recredit the customer's account in the amount of the item.").

Under Ohio law and the U.C.C., this default rule "may be varied by agreement," so long as the agreement does not "disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care" and does not set a "manifestly unreasonable" standard for the bank's responsibilities. O.R.C. § 1304.03(A); U.C.C. § 4-103(a). The official comments to U.C.C. § 4-103(a) explain that it "confers blanket power to vary all provisions of the Article by agreements of the ordinary kind." U.C.C. § 4-103, cmt. 2; see also id., cmt. 1 ("This section, therefore, permits within wide limits variation of the effect of provisions of the Article by agreement."). See also Cuyahoga Cleaning Servs., Inc. v. Women's Fed. Sav. Bank, No. 61244, 1992 WL 209586, at *4 (Ohio Ct. App. Aug. 27, 1992) (noting the ability of banks and customers to vary the U.C.C.'s default provisions by agreement).

Here, the parties varied the default rule by way of the Master Services Agreement, which provides that Huntington is not liable for an unauthorized transaction if Majestic did not avail itself of a fraud prevention service that was offered by Huntington and was designed to discover or prevent the type of unauthorized activity that occurred.  See Cincinnati Ins. Co. v. Wachovia Bank, Nat'l Ass'n, No. 08-CV-2734, 2010 WL 2777478, at *5 (D. Minn. July 14, 2010) (upholding the ability of bank and commercial account holder to agree under U.C.C. § 4-103(a) that customer would be liable for unauthorized checks if it declined to implement one of the bank's fraud prevention services, including Check Positive Pay).  The complaint acknowledges the existence of Huntington's Check Positive Pay/Reverse Positive Pay service, and Majestic does not dispute that it was eligible for the service.  Further, the complaint alleges that the manner in which the fraud was committed – through out-of-sequence check numbers and in amounts on checks not issued by Majestic – was of the type that Check Positive Pay/Reverse Positive Pay is designed to discover or prevent.  See Uniform Laws Annotated, U.C.C. Forms & Materials, § 4.3.5 Form 1, Pt. 2; Wachovia Bank, 338 F.3d at 320; J. Walter Thompson, U.S.A, 518 F.3d at 135 ("Positive Pay permitted [the bank] to match check numbers, dates, and amounts on the checks that were presented to [the bank] with a list provided by [the account holder] prior to payment of a check.").

The complaint alleges that Huntington violated the U.C.C. by attempting to shift liability for unauthorized checks onto its customers.  This allegation makes little sense in light of the language of O.R.C. § 1304.03(A) allowing parties to vary the U.C.C.'s default provisions by agreement.[2]  In response to the motion to dismiss, Majestic argues that Huntington violated the statute by attempting to completely absolve itself of its duties to act in good faith and exercise ordinary care.  Section 1304.03(A) provides that parties cannot agree to disclaim a bank's responsibility for those duties.  But Majestic's argument ignores several provisions of the Master Services Agreement which plainly reaffirm Huntington's duties to act in good faith and exercise ordinary care.  One of those provisions provides that the "Bank will use ordinary care in performing [its] Services and with processing Transactions"; another provides that the Bank will be liable for its "own bad faith or willful misconduct."  Master Services Agr. at PAGEID #2; see also id. at PAGE ID #3 (Bank must use "best efforts" to correct errors and act "as soon as reasonably possible"), at PAGEID #8 (Bank

---

[2] Moreover, the complaint concedes that Majestic, a corporate customer, received the Master Services Agreement at the time it opened the business account; thus, there is no apparent issue with contract formation.

must "make every reasonable effort" to provide performance of bill pay system), at PAGEID #13 (Bank liable for its "own gross negligence or willful misconduct").

Thus, the Master Services Agreement imposes duties upon Huntington to act in good faith and exercise ordinary care in performing its obligations, including in processing checks and in providing fraud prevention services to those who enroll. The complaint does not allege that Huntington breached its duties in processing the four forged checks.[3] Nor does the complaint contain specific allegations that the terms and conditions by which Huntington provided fraud prevention services were manifestly unreasonable.[4] See O.R.C. § 1304.03(A) ("[T]he parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.").

Majestic instead contends that the Master Services Agreement's shift of liability for unauthorized checks does not apply here because Check Positive Pay is not expressly mentioned in the Agreement as an available fraud-prevention product. Majestic's interpretation of the Agreement is not a natural or reasonable one. The Agreement does not limit the shift in liability to only those instances in which an enumerated product would have prevented the fraud. Indeed, the Agreement does not list or mention the name of any particular product at all. Cf. O.R.C. § 1304.03, cmt. 1 (noting that in light of changing conditions and improved methods, "it would be unwise to freeze present methods of operation" into the rules governing the parties' relationship). Instead, the Agreement broadly frames the shift in liability in terms of those products that were designed to discover or prevent the type of loss suffered by the customer. It is undisputed that Check Positive Pay was designed to discover or prevent the type of loss suffered by Majestic. Under the Agreement, Huntington is not liable for that loss.

---

[3] Majestic argues in its brief that the Master Services Agreement would allow Huntington to disclaim liability for paying a "check written in crayon on a paper napkin." Doc. 10 at PAGEID #95. However, that fact scenario is not what is alleged to have happened to Majestic, and, in any event, Huntington owed duties of good faith and ordinary care in processing transactions.

[4] Majestic contends that it was manifestly unreasonable for Huntington to have attempted to completely absolve itself of liability for unauthorized checks. Again, this argument is contradicted by the U.C.C., which allows parties to vary the default provisions by agreement, and by the plain language of the Master Services Agreement, which imposes duties of good faith and ordinary care on Huntington.

**IV.     Conclusion**

For the reasons stated above, Huntington's motion to dismiss (doc. 4) is granted and this action is hereby dismissed.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: November 3, 2016