**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MAJESTIC BUILDING MAINTENANCE, INC.<br><br>Plaintiff,<br><br>v.<br><br>HUNTINGTON BANCSHARES INCORPORATED dba THE HUNTINGTON NATIONAL BANK<br><br>Defendant. | CASE NUMBER: 2:15-cv-3023<br><br>JUDGE JAMES L. GRAHAM<br><br>MAGISTRATE JUDGE KIMBERLY A. JOLSON |

**NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF DEFENDANT HUNTINGTON BANCSHARES INC.**

Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure, notice is hereby given that Plaintiff Majestic Building Maintenance, Inc. ("Majestic"), through counsel, will take the deposition of the following corporate representative(s) of Defendant Huntington Bancshares Inc.: the representative(s) with the most knowledge regarding the matters set out in Exhibit A attached hereto.

The deposition will take place at the offices of Doucet & Associates Co., LPA, on May 4, 2018 at 9:30 a.m. and continuing day-after-day thereafter until complete. The deposition will be memorialized by stenographic means.

Respectfully Submitted,
DOUCET & ASSOCIATES CO., LPA

*/s/ Sean M. Kohl*___________

Sean M. Kohl (0086726)
Andrew J. Gerling (0087605)
700 Stonehenge Parkway, Suite 2B
Dublin, OH 43017
(614) 944-5219 PH
(818) 638-5548 FAX
Sean@Doucet.Law
Andrew@Doucet.Law
*Co-Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this March 2, 2018, I caused this document to be electronically filed with the Clerk of Courts by using the ECF System, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, pursuant to Fed.Civ.R.P. 5(b)(3) and Loc. R. 5.2(b):

Brett A. Wall
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
bwall@bakerlaw.com
*Attorneys for The Huntington National Bank*

*/s/ Sean M. Kohl*_______
Sean M. Kohl (0086726)

# EXHIBIT A

## DEFINITIONS

For the purposes of responding to this Notice, the following terms are defined as follows:

1. **"Account"** means the business checking account Plaintiff opened with Defendant on or around November 2010.

2. **"Answer"** refers to the Answer filed by Defendant in response to the Amended Complaint in this action.

3. "**Avail**" means the same as the meaning assigned by Huntington in its Rules and Regulations for Business Accounts.

4. **"Business Account(s)"** means the same as the meaning assigned by Huntington in its Rules and Regulations for Business Accounts.

5. **"BSS"** means all fraud prevention services and/or products You claim compose Your Business Security Suite which is generally referenced in the Master Service Agreement.

6. "**Communicate**" or "**Communication**" means every manner or means of disclosure, transfer, or exchange of information, and every instance of disclosure, transfer or exchange of information, whether orally, by document, by telephone, mail or otherwise

7. **"Complaint"** refers to the Amended Complaint filed by Plaintiff that gives rise to the litigation referenced in the caption of this document.

8. "**Comprehensive Guide to BSS**" means the 2015 Business Security Suite Fraud Mitigation Services comprehensive guide produced by Huntington as HNB000000189 – HNB000000251.

9. "**Defendant**" means **Huntington National Bank**, its employees, agents, officers, directors, attorneys, investigators, and any other person or entity acting or purporting to act on its behalf.

10. **"Determine"** means to discover, calculate, decide, ascertain, find out, or to establish conclusively.

11. "**Discovery Requests**" means Majestic's written requests for Requests for Production, Requests for Admission and Interrogatories served on Huntington in this action.

12. "**Eligible**" means the same as the meaning assigned by Huntington in its Rules and Regulations for Business Accounts.

13. "**Fraud**" means the same as the meaning assigned by Huntington in its Rules and Regulations for Business Accounts.

14. "**Investigative Referral Forms**" refer to the forms referenced in the **Comprehensive Guide to BSS**.

15. "**Master Services Agreement**" means the document attached to the Complaint as Exhibit A and any variation thereof produced by Huntington in response to Majestic's Discovery Requests.

16. **"Majestic"** means Plaintiff Majestic Building Maintenance, Inc. and Mr. Luther McNeil.

17. **"Person(s)"** includes individuals, corporations, governments, governmental subdivisions, agencies, business trusts, estates, trusts, partnerships, associations, cooperatives, or other business or legal entities.

18. "**Pertaining to**," "**relating to**," "**pertain to**," "**relate to**," "**showing,**" "**reflecting**" or "**Concerning**" mean referring to, alluding to, responding to, discussing, commenting upon, showing, disclosing, analyzing, reporting about, explaining, mentioning, constituting, comprising, evidencing, setting forth, containing, summarizing or characterizing, either directly or indirectly, in whole or in part, the given subject matter

19. **"Policies"** means any written policies distributed or made available by Huntington to its employees or agents.

20. "**Region**" means Ohio, Michigan, Pennsylvania, Indiana, West Virginia and Kentucky that comprise the putative class as described in the Complaint.

21. **"You"** and **"Your"** mean the same as "Defendant."

22. "**Unauthorized Checks**" means the images of the 4 unauthorized or forged checks attached to the Complaint as Exhibit C.

## AREAS OF KNOWLEDGE

1. All allegations in the Complaint and Answer including any affirmative defense pled by You.

2. All Communications between You and Majestic from the opening of the Account to the present date.

3. The identity of the witnesses, both lay and expert which are known by You, that have knowledge relevant to Majestic's claims and/or Defendant's claims and defenses.

4. All Your written responses and the documents You provided in response to Majestic's discovery requests.

5. All Policies about Huntington's determination of whether to reimburse Business Accounts that experienced a financial loss due to Fraud from 2012 to the present.

6. All Your products and their prices which are designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084 that Huntington offered to Eligible accounts from 2012 to the present.

7. All Your Policies about all products designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084 that Huntington offered in exchange for payment or for free to Eligible Accounts from 2012 to the present.

8. All Your Policies about Your use of Investigative Referral Forms.

9. The following information about an Investigative Referral Form:

    a. the format from January 1, 2010 to the present;
    b. the training You offer about the Investigative Referral Forms from January 1, 2010 to the present;
    c. the purpose and Your use from January 1, 2010 to the present; and
    d. its creation.

10. All Your Policies about the marketing of all products designed to discover and/or prevent Fraud from 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

11. The following information about the BSS from 2012 to the present:

    a. The costs to Huntington;
    b. The revenue generated from fees; and
    c. the known savings to Huntington and to its customers from successfully preventing and/or discovering Fraud.

12. Your employee training about all products designed to discover and/or prevent Fraud from 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084 and how such training is implemented.

13. Your employee training about the Comprehensive Guide to the BSS and any updates, amendments and variations thereof.

14. Your employee training about claims for reimbursement due to Fraud made to Huntington by Business Accounts from January 1, 2010 to the present.

15. All Your Policies about the Comprehensive Guide to the BSS and any updates, amendments and variations thereof.

16. All Your Policies about reviewing and evaluating claims for reimbursement due to Fraud made to Huntington by Business Accounts from January 1, 2010 to the present.

17. Your employee training and Policies about how Huntington avoids cashing fraudulent checks from January 1, 2010 to the present.

18. All benefits, protections and limitations of each product designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

19. Each type and number of Eligible Accounts in the Region from 2012 to the present.

20. All facts and circumstances about how the BSS would have prevented the Unauthorized Checks from being paid by Huntington.

21. All facts and circumstances about how the BSS would have discovered the Unauthorized Checks before they were paid by Huntington.

22. All facts and circumstances about Your decision not to reimburse the Account for paying the Unauthorized Checks.

23. All facts and circumstances about Your investigation and evaluation of Your ordinary care in preventing the payment of the Unauthorized Checks.

24. All facts and circumstances about Your ordinary care in cashing the Unauthorized Checks.

25. How the BSS offered and marketed to Majestic.

26. All facts and circumstances concerning how Majestic was Eligible for and failed to avail itself of Your products designed to discover and/or prevent Fraud from 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

27. All reasons why Huntington did not reimburse Majestic for the Unauthorized Checks.

28. All training and Policies about Huntington's decision not to reimburse Majestic for the Unauthorized Checks

29. All Policies and the process of how an Eligible account enrolls in products designed to discover and/or prevent Fraud from 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

30. The number of all Eligible accounts that enrolled in BSS from January 1, 2012 to the present.

31. The number of all Huntington accounts that were not / are not Eligible for enrollment in BSS from January 1, 2012 to the present.

32. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud from January 1, 2012 to the present.

33. The number of Eligible accounts that did and did not Avail themselves of Your products designed to discover and/or prevent Fraud from January 1, 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

34. The number of accounts that were not / are not Eligible for Your products designed to discover and/or prevent Fraud from January 1, 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

35. The number of accounts that were / are Eligible for Your products designed to discover and/or prevent Fraud from January 1 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

36. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud that were and were not reimbursed by Huntington from January 1, 2012 to the present.

37. The number and identity of all Eligible accounts that (1) did not Avail themselves of Your products designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084; (2) experienced a financial loss due to Fraud; and (3) were not reimbursed by Huntington from January 1, 2012 to the present.

38. The following total amounts in dollars from January 1, 2012 to the present:

    a. losses due to Fraud on Eligible Accounts that failed to Avail themselves of Your products designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084; and
    b. amounts You reimbursed Eligible Accounts for Availing themselves of Your products designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084 when such accounts experienced a financial loss due to Fraud.

39. How Huntington uses the Passport Database / System and what types of information is stored on it.

40. How Huntington uses the Scorecard Database / System and what types of information is stored on it.

41. How Huntington uses the Service Reports and Penetration Reports and what types of information is stored in the reports.

42. How Huntington uses the Key Volumes Reports and what types of information is stored in the reports.

43. How Huntington uses the Commercial Loss Reports and what types of information is stored in the reports.

44. The content of all Investigative Referral Forms about Majestic.

45. The drafting, development, use, purpose and content of the Comprehensive Guide to the BSS.

46. The drafting, use, and content of the Master Service Agreement.

47. All variations, revisions and updates of the Comprehensive Guide to the BSS from 2012 to the present.

48. The drafting, use, purpose and content of the document produced at HNB000001089.

49. All Your training offered to employees concerning HNB000001089.

50. All variations, revisions, and updates of the document produced at HNB00001089.

51. How Huntington knows the BSS has been successful from January 1, 2012 to the present.

52. Your document retention policy.