**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**MAJESTIC BUILDING
MAINTENANCE, INC.,**

        **Plaintiff,**

    **v.**                           **Civil Action 2:15-cv-3023
Judge James L. Graham
Magistrate Judge Jolson**


**HUNTINGTON BANCSHARES
INCORPORATED,**

        **Defendant.**

<u>**OPINION AND ORDER**</u>

    This matter is before the Court on Plaintiff Majestic Building Maintenance, Inc.'s ("Majestic") Motion for Leave to File a Second Amended Complaint (Doc. 48) and Defendant Huntington Bancshares Incorporated's ("Huntington") Motion for Protective Order, which seeks to prevent or limit Plaintiff's deposition topics for Huntington's corporate representative (Doc. 42). For the reasons that follow, the Motion to Amend is **DENIED**, and the Motion for Protective Order is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

###     A.  Procedural Background

    Majestic initiated this matter as a putative class action against Huntington on November 20, 2015. (Doc. 1). At that time, Majestic alleged that Huntington violated Ohio's version of the Uniform Commercial Code ("UCC") by failing to refund monies paid out of Majestic's business checking account on four unauthorized checks. (*Id.* (citing Ohio Rev. Code. § 1304.30; U.C.C.

§ 4-401)).  The Court summarized the factual allegations leading to this dispute in its November

3, 2016 Opinion and Order:

> Majestic is an Ohio corporation which specializes in commercial cleaning services. Huntington National Bank has its principal place of business in Columbus, Ohio.  The complaint alleges that subject matter jurisdiction exists under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).
>
> In November 2010, Majestic opened a business checking account with Huntington.  The complaint alleges that Majestic received a Master Services Agreement at the time the account was opened.  The Agreement, which is attached [to] the complaint, contains a section of "Standard Terms of Conditions" and a section of "Rules and Regulations for Business Accounts."
>
> Within the Rules and Regulations, the Agreement provides:
>
>> [W]e [Huntington] have available certain products designed to discover or prevent unauthorized transactions, including unauthorized checks and ACH debits, forgeries, and alterations (all such activities referred to as "fraud").  While no such product is foolproof, we believe that the products we offer will reduce the risk of loss to you from fraud.  You agree that if your account is eligible for those products and you choose not to avail yourself of them, then we will have no liability for any transaction that occurs on your account that those products were designed to discover or prevent, nor will we have any duty to re-credit your account for any such losses.
>
> Master Services Agr. at PAGEID #35.
>
> Luther McNeil is Majestic's President and the only authorized signatory on the account.  On November 24, 2014, McNeil was reviewing the account online and noticed that unauthorized checks had been cleared from the account on that same day.  Upon examination, McNeil found that four checks totaling $3,973.96 had been debited from the account.  Each check contained a forgery of his signature and each one was made payable to an individual who was unknown to McNeil or Majestic.  The forged checks did not feature the hologram, the Huntington logo or the address format that appeared on Majestic's checks, nor did they conform to the check number sequence of Majestic's account.
>
> McNeil immediately contacted Huntington about the forged checks and filled out paperwork for a fraud complaint and a request for reimbursement.  Huntington denied his request for reimbursement on the grounds that he had not enrolled in Huntington's Check Positive Pay/Reverse Positive Pay service. . . .

Following Huntington's denial of the request for reimbursement, Majestic filed this action. Majestic alleges that Huntington violated § 4-401 of the U.C.C., which provides for the default rule that a customer is not liable for a check which is not properly payable. *See* O.R.C. § 1304.30(A). Majestic further alleges that Huntington violated § 4-103(a) of the U.C.C. because it breached its duty of good faith and ordinary care by attempting to contractually shift liability for forged checks to a customer. *See* O.R.C. § 1304.03(A). The complaint also contains class allegations. Majestic seeks to represent a six-state class of Huntington business accounts holders who suffered a financial loss from Huntington making payments out of their accounts for items which were not properly payable. The complaint alleges that Huntington has violated the U.C.C. by attempting to shift liability for unauthorized checks upon business account customers unless they enroll in Check Positive Pay, Reverse Positive Pay or a similar fraud detection service.

(Doc. 19 at 1–3).

In that same Opinion and Order, the Court granted Huntington's Motion to Dismiss, explaining that several provisions of the Master Services Agreement "plainly reaffirm[ed] Huntington's duties to act in good faith and exercise ordinary care." (*Id.* at 5). Majestic appealed, and the Sixth Circuit reversed the Order of dismissal and remanded the case "with instructions to allow Plaintiff an opportunity to amend the complaint and conduct discovery." (Doc. 22 at PAGEID #: 181).

### B. Motion to Amend (Doc. 48)

This Court gave Majestic until December 15, 2017, to amend the Complaint in this matter. (*See* Doc. 26). On that date, Majestic filed its First Amended Complaint. (Doc. 32). The First Amended Complaint contains nearly identical factual allegations as the initial complaint but changed the putative class definition to include: "All Huntington business account holders who experienced a financial loss due to Huntington paying instrument(s), where Huntington was notified that those instrument(s) were improperly paid." (Doc. 32 at ¶ 79).

Roughly six months later, on June 7, 2018, Majestic moved for leave to file a Second Amended Complaint, asserting that it did not wish to "substantively change any of Plaintiff's

claims, but rather seeks to clarify Majestic's class definition." (Doc. 48 at 1). Majestic now seeks to define the class as *all* Huntington account holders, as opposed to just business account holders, that:

> (1) Have a bank account subject to a provision that disclaims liability for transactions on the account if the customer does not avail themselves of products purportedly designed to discover or prevent unauthorized transactions (the "Provision");
>
> (2) Where the customer did not avail themselves of any of the product(s) available under the Provision;
>
> (3) Where Huntington paid the instrument(s) from the customer's account; and
>
> (4) Where it was later learned that the instrument(s) were not properly payable.

(Doc. 48-2 at 12). Huntington opposes the amendment, arguing that by eliminating the word "business" from the proposed Second Amended Complaint, Majestic seeks to expand the class substantially "with only ten weeks remaining in discovery." (Doc. 50 at 1). On June 28, 2018, Majestic filed a Reply (Doc. 51), making the Motion to Amend ripe for this Court's consideration.

### C. Discovery at Issue (Doc. 42)

Majestic also seeks corporate testimony from Huntington on fifty-two topics. (*See* Doc. 42-2). Despite efforts to narrow the scope of the deposition (*see* Doc. 41-7), the parties reached an impasse. Consequently, Huntington filed a Motion for Protective Order on April 26, 2018 (Doc. 42), seeking to eliminate or limit various categories of deposition topics. In moving for a protective order, Huntington also seeks its reasonable fees and costs. (*Id.*). Moreover, Huntington asked the Court to prevent the deposition of its corporate representative from proceeding until a ruling was made on the protective order. (*Id.* at 1). The Court, noting that the deposition at issue was scheduled for May 4, 2018, expedited briefing and ordered the deposition

not to proceed until after the Court ruled on the pending Motion for Protective Order. (Doc. 43). Consistent with the expedited schedule, Majestic filed a Response in Opposition (Doc. 46), and Huntington filed a Reply (Doc. 47). Thus, this matter is also ripe for consideration.

## II.    MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Doc. 48)

### A.  Relevant Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure—which Majestic relies on in support of its Motion for Leave—provides that when a party seeks leave of court to file an amended pleading, "[t]he court should freely give leave when justice so requires." This rule, while allowing a liberal policy in favor of granting amendments, "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Thus, the trial court enjoys broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Once a pleading deadline has passed, however, "litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008); *see also Hill v. Banks*, 85 F. App'x 432, 433 (6th Cir. 2003) (stating that "once a scheduling order's deadline passes, a party must first show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before a court will consider whether the amendment is proper under Rule 15(a)"). Accordingly,

under Rule 16, the Court must evaluate whether good cause exists for Majestic's failure to seek leave to amend within the deadline, while also considering "the potential prejudice to the nonmovant." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *see also Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-1118, 2012 WL 5467526, at *2 (S.D. Ohio Nov. 9, 2012) ("[E]ven if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline.").

This Court has noted that "the touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007). Therefore, if Plaintiff cannot establish its diligence in attempting to meet the deadline for the filing of an amended complaint, "it is immaterial whether the standards under Rule 15(a) can be met" because "[w]ithout a showing of diligence, the deadline in the Rule 16(b) order will not be extended, and without such an extension, a motion for leave to amend will be denied." *Id.*

## B. Analysis

Although the timeframe for amendment allowed by the Court in its Scheduling Order (Doc. 26) has passed, Majestic fails to recognize the significance. Despite Majestic's contentions that Rule 15 is the appropriate standard, the Sixth Circuit is clear that once a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16. Importantly, Rule 16 "ensure[s] that 'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes). Indeed, "[a] scheduling order maintains orderly proceedings and is 'not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded . . . without peril.'" *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 240 (E.D. Ky. 2018) (quoting *Birge v. Dollar Gen. Corp.*, No. 04-2531 B, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006)).

Here, it is undisputed that Majestic missed the deadline to amend the complaint by six months. (*See* Doc. 26). Accordingly, the relevant inquiry is whether Majestic acted diligently in attempting to meet the Court's deadline under Rule 16. Yet Majestic has offered no evidence of its diligence or an explanation for its delay. Instead, the Motion to Amend vaguely asserts that "[a]fter a more thorough review and understanding of the additional discovery received from Huntington, Majestic seeks to amend its Complaint a second time to clarify its class definition." (Doc. 48 at 3). This explanation does not demonstrate diligence. *See Cooke v. AT&T Corp.*, No. 2:05-CV-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007) ("oversight is ordinarily incompatible with a finding of diligence") (citing *North Start Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1145 (D. Minn. 2003) ("'[C]arelessness, inadvertence, or inattention' is not compatible with a finding of diligence so as to support modification of scheduling order deadlines.")).

Majestic further argues that the proposed amendment "does not seek to change any of the claims in this case, does not seek to change the theory of liability of the case, nor does the proposed amendment add or change any parties in the case"; rather, the amendment "seeks to refine the class allegations and clarify the class definition." (*Id.*). This, of course, is not the relevant inquiry, as it does not explain whether Majestic acted with diligence, nor does it explain what new information was acquired that made amendment by the December deadline impossible. Moreover, as Huntington correctly notes, Majestic has not "identi[fied] a single document produced, fact elicited at deposition, or obstacle in discovery that would justify its untimely

request to expand this case" to include all consumer accounts, rather than just Huntington's business accounts. (Doc. 50 at 10). Thus, Majestic fails to show the necessary diligence for amendment under Rule 16. *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-143, 2011 WL 1560650, at *4 (S.D. Ohio Apr. 25, 2011); *see also Ross v. Am. Red Cross*, No. 2:09-CV-00905, 2011 WL 13157179, at *1 (S.D. Ohio Aug. 30, 2011) (a court must "adhere to the principle that [t]he party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines").

The Court also notes that Huntington would indeed suffer prejudice if millions of consumer accounts were added to the class definition with just weeks remaining in discovery. In addition, Huntington represents that the Fraud Prevention Products, which are the subject of this lawsuit, are available only to business account holders, not consumers. (Doc. 50 at 11). As Huntington explains, such an amendment thus would require additional factual investigation and document review, new discovery requests, and additional depositions—all at a significant cost to Huntington. (*Id.* at 14). Ultimately, though, the prejudice element is somewhat extraneous, because "even if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline." *See Vanburen*, 2012 WL 5467526, at *2.

Accordingly, Majestic has not established the good cause required for leave to amend under Rule 16(b), and the Court need not undertake any analysis under Rule 15(a). *See Stanich*, 2011 WL 1560650, at *5. For those reasons, Majestic's Motion for Leave to File a Second Amended Complaint (Doc. 48) is **DENIED**.

### III. MOTION FOR PROTECTIVE ORDER (Doc. 42)

#### A. Relevant Standard

"A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14CIV10067, 2017 WL 3610511, at *11 (S.D.N.Y. Aug. 21, 2017); *see also* Fed. R. Civ. P. 30 Advisory Committee's Note to 2015 Amendment ("Rule 30 is amended in parallel with Rules 31 and 33 to reflect the recognition of proportionality in Rule 26(b)(1)."). Rule 26, which governs the scope of discovery and its limits, provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The rule "is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information." *BlackRock Allocation Target Shares: Series S Portfolio*, 2017 WL 3610511, at *6 (quoting Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2015 Amendment). However, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

In order to protect a party from annoyance, embarrassment, oppression, or undue expense, and upon a finding of good cause, a court can issue a protective order under Rule 26. Fed. R. Civ. P. 26(c)(1)("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . ."). "The burden of establishing good

cause for a protective order rests with the movant." *E.g.*, *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *1–2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To show good cause, a movant must be "able to demonstrate that the requested discovery, if not excluded or materially modified, would cause a clearly defined and serious injury." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *2 (W.D. Ky. June 29, 2016) (citations omitted); *see also Smith*, 2006 WL 7276959, at *1–2 ("To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.") (citing *Nix*, 11 F. App'x at 500)).

## B. Analysis

Huntington's objections to the deposition notice can be grouped into four general categories: (1) topics that fail to comply with the reasonable particularity requirement; (2) topics that are not proportionate to the needs of the case; (3) topics that inappropriately require testimony on legal issues; and (4) topics that are duplicative and cumulative. (*See* Doc. 42-1 at 6–19). The Court addresses each category of objections in turn.

### 1. Reasonable Particularity Requirement

Rule 30(b)(6) of the Federal Rules of Civil Procedure "imposes not only a burden upon the party who designates its representative, but also upon the discovering party as well." *Consumer Fin. Prot. Bureau*, 2016 WL 9460471, at *3 (citation omitted). The party who seeks deposition testimony pursuant to Rule 30(b)(6), "must describe the matters to be explored in the deposition with 'reasonable particularity' sufficient to enable the responding corporation or business entity to produce a representative witness who can testify to the entity's knowledge on

the topics so identified." *Id.* (citing *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 687–92 (S.D. Fla. 2012)). "The test for reasonable particularity is whether the request places the party upon "reasonable notice of what is called for and what is not." *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018) (citations omitted).

Here, Huntington argues that Topics 1, 2, 3, and 4 do not meet the reasonable particularity requirement because the topics too broadly seek testimony on: (1) all allegations in the Complaint and Answer; (2) all communications between Huntington and Majestic; and (3) all discovery and documents produced. (Doc. 42-1 at 6–9).

*i.    All Allegations in the Complaint and Answer (Topics 1 and 3)*

Huntington argues that seeking testimony on all facts related to the allegations in the Complaint, Answer, or affirmative defenses (as Topic 1 does) falls short of the reasonable particularity requirement. (Doc. 42-1 at 6–7; *see also* Topic 1: "All allegations in the Complaint and Answer including any affirmative defense pled by You."). However, courts have consistently held "that a Rule 30(b)(6) notice of deposition that seeks the factual bases for another party's claims or defenses is proper." *Smith*, 2006 WL 7276959, at *3 (citing *Bd. of Regents v. Nippon Tel. and Tel. Corp.*, 2004 U.S. Dist LEXIS 28819, *15–17 (W.D. Tex. June 1, 2004) (holding that it was improper to refuse to provide Rule 30(b)(6) testimony regarding the factual bases of its affirmative defenses)). Consequently, to the extent Topic 1 seeks testimony regarding the factual bases of the Answer and any affirmative defenses, the Court finds it to be proper. Majestic is not entitled, however, to testimony on the facts it set forth it its *own* Complaint, as Huntington's representative would not have knowledge of why Majestic made certain allegations in its own pleading. *See United States v. Holland*, No. 13-CV-10082, 2017

WL 1354178, at *4 (E.D. Mich. Apr. 13, 2017). Thus, Huntington's request for a protective order as to Topic 1 is granted in part and denied in part. Specifically, Majestic may ask Huntington's 30(b)(6) deponent about its Answer and any affirmative defenses.

Huntington also argues that Topic 3 fails the reasonable particularity requirement. (Doc. 42-1 at 6–7). The topic seeks "[t]he identity of the witnesses, both lay and expert which are known by You, that have knowledge relevant to Majestic's claims and/or Defendant's claims and defenses." (*Id.*). Neither Huntington nor Majestic presents any case law discussing Topic 3, but under Rule 26, courts may consider whether proposed discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Here, while it is apparent that this information is relevant, it is similarly clear that it would be more cost-efficient and less burdensome for Huntington to identify potential witnesses through written discovery. Consequently, Huntington's request for a protective order as to Topic 3 is granted. Majestic may, however, question Huntington's 30(b)(6) deponent about witnesses it identifies as particularly relevant, as long as those witnesses are communicated to Huntington at least seven (7) days prior to the deposition.

### ii. All Communications Between Huntington and Majestic (Topic 2)

Huntington avers that Topic 2—which requires designating a witness to testify as to "[a]ll Communications between You and Majestic from the Opening of the Account to the Present date"—is not sufficiently particular. (Doc. 42-1 at 7–8). Majestic defines "Communication" as "every manner or means of disclosure, transfer, or exchange of information, and every instance of disclosure, transfer or exchange of information, whether orally, by document by telephone, mail or otherwise." (42-2 at 4). As written, Topic 2 requires Huntington's representative to testify about every interaction between Huntington and Majestic over an eight-year period,

whether it occurred in-person at a Huntington branch, over the phone, or in writing. (*Id.* at 8). It appears that Majestic has since narrowed the timeframe from 2010–2015 but refuses to limit the definition of "Communications" to just those related to this case. (*Id.*). Huntington thus seeks a protective order limiting Topic 2 "to communications dealing with BSS[1] and Majestic's claim for reimbursement for the four allegedly unauthorized checks." (*Id.*).

The Court agrees that requiring *all* communications, with no reference to a particular topic, is worded so broadly as to make compliance with the notice unnecessarily burdensome. Indeed, it would be nearly impossible for Huntington to identify the specific information being requested and adequately prepare a representative. *See Tr. of Boston Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (holding that deposition topics seeking testimony regarding "all facts related to" certain topics did not meet the reasonable particularity requirement). Thus, the Court finds that because Topic 2 does not describe the intended topic with reasonable particularity, it will be limited to Huntington's proposal—all communications related to this case. Huntington's request for a protective order as to Topic 2 is granted.

### iii.    All Discovery and Documents Produced (Topic 4)

In Topic 4, Majestic seeks testimony on every "[w]ritten response[] and the documents You provided in response to Majestic's discovery requests." (Doc. 42-2). Huntington argues that it has produced thousands of pages of documents, and it is not practical or feasible to provide corporate testimony on the content of every document produced; thus, the topic is not described with reasonable particularity. (Doc. 42-1 at 9). Majestic counters that this testimony is necessary in order to authenticate documents produced in discovery. (Doc. 46 at 7).

---

[1] BSS is defined in the Notice of Deposition as "all fraud prevention services and/or products You claim compose Your Business Security Suite which is generally referenced in the Master Service Agreement." (Doc. 42-2 at 4).

The Court finds this topic to be overbroad and lacking reasonable particularity. *See Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *20 (D. Md. Feb. 21, 2017) (holding that deposition topics that seek "all discovery responses and answers[,]" *inter alia*, "do[] not provide reasonable guidance on what is actually being sought"); *see also Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000) (holding that deposition topics seeking information regarding defendants' interrogatories and requests for production were "overbroad, unduly burdensome, and an inefficient means through which to obtain otherwise discovery information"). Accordingly, Huntington's request for a protective order as to Topic 4 is granted. Majestic may, however, identify a reasonable number of documents it seeks to have authenticated in the deposition, if those specific documents are identified for Huntington at least seven (7) days prior to the deposition.

### 2. *Proportionality*

Huntington next argues that numerous deposition topics are not proportional to the needs of this case. In analyzing whether discovery is "proportional . . . courts should consider 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14CV-00074-JHM, 2017 WL 4050319, at *4 (W.D. Ky. Sept. 13, 2017) (quoting Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes 2015 Amendment).

Huntington argues that under this proportionality standard, its representative should not be required to (1) identify individual customers at a deposition; (2) testify about matters

unrelated to the putative class; (3) testify about types of fraud unrelated to check-fraud; and (4) testify as to matters that occurred two years prior to the expiration of the statute of limitations governing Majestic's claims.  (Doc. 42-10 at 9–17).

### i. Individual Customers (Topics 32, 36, 37)

Huntington seeks a protective order preventing testimony on Topics 32, 36, and 37, which require the number and identification of all eligible accounts that meet certain criteria:

> 32. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud from January 1, 2012 to the present.
>
> 36. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud that were and were not reimbursed by Huntington from January 1, 2012 to the present.
>
> 37. The number and identity of all Eligible accounts that (1) did not Avail themselves of Your products designed to discover and/or prevent Fraud referenced in the Rules and Regulations for Business Accounts at page HNB000000084; (2) experienced a financial loss due to Fraud; and (3) were not reimbursed by Huntington from January 1, 2012 to the present.

(Doc. 42-1 at 9).  Huntington argues that these "specified categories have[] nothing to do with the numerosity requirement of Rule 23[,]" are not proportional to the case, and are better suited to other forms of discovery such as document requests and interrogatories.  (*Id.* at 9–10).  Moreover, Huntington explains that it has provided "the total number and account information of every business checking account customer who failed to use BSS products, suffered an instance of check fraud, and had their reimbursement claim denied" during the relevant time frame.  (*Id.* at 10).  Thus, Huntington believes Majestic possesses all of the relevant information regarding the size of the potential class.  (*Id.* at 10–11).

Majestic acknowledges that it has received information from Huntington, but states that it plans to establish numerosity through deposition testimony, as well as test the "veracity of the

tiny amount of accounts Huntington claims to be within the class through deposition." (Doc. 46 at 8). Majestic further attempts to clarify its request:

> In its notice of deposition, Majestic requests that a corporate representative be able to identify general information as a whole related to the accounts that fit into the requested category. Majestic is not concerned with the names, contact information, or other individual facts surrounding each account as Huntington suggests. Majestic is more concerned as to which states are represented by a certain category of accounts or how much money the entire category of accounts lost as a result of fraud generally. In order to proceed with its case Majestic must be able to ascertain how many accounts Huntington defines as qualified for its fraud prevention products compared to how many are not. These facts will help establish a record from which Majestic can infer the putative class size to establish numerosity.

(*Id.* at 9). This clarification dramatically changes the scope of Topics 32, 36, and 37. Indeed, the information Majestic now seeks is significantly narrower than the Topics in the deposition notice and appears to be relevant and proportional to the needs of the case. Consequently, the parties are directed to meet and confer on deposition topics that concern the general number of accounts that fit into each category described in Topics 32, 36, and 37. The meet and conferral should occur at least seven (7) days prior to the deposition. Based upon Majestic's change of position, Huntington's request for a protective order as to Topics 32, 36, and 37 is denied as moot.

### ii.    *Unrelated to Putative Class (Topics 19, 30–36)*

Huntington also seeks a protective order prohibiting testimony about matters they describe as unrelated to the class defined in the Amended Complaint. (Doc. 42-1 at 11). The putative class is defined as follows: "All Huntington business account holders who experienced a financial loss due to Huntington paying instrument(s), where Huntington was notified that those instrument(s) were improperly paid." (Doc. 32 at ¶ 79).

Huntington avers that Majestic seeks testimony—through Topics 19, 30, 31, 32, 33, 34, 35, and 36—regarding customers who do not fit into the class:

19. Each type and number of Eligible Accounts in the Region from 2012 to the present.

30. The number of all Eligible accounts that enrolled in BSS from January 1, 2012 to the present.

31. The number of all Huntington accounts that were not / are not Eligible for enrollment in BSS from January 1, 2012 to the present.

32. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud from January 1, 2012 to the present.

33. The number of Eligible accounts that did and did not Avail themselves of Your products designed to discover and/or prevent Fraud from January 1, 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

34. The number of accounts that were not / are not Eligible for Your products designed to discover and/or prevent Fraud from January 1, 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

35. The number of accounts that were / are Eligible for Your products designed to discover and/or prevent Fraud from January 1 2012 to the present referenced in the Rules and Regulations for Business Accounts at page HNB000000084.

36. The number and identity of all Eligible accounts that experienced a financial loss due to Fraud that were and were not reimbursed by Huntington from January 1, 2012 to the present.

(Doc. 42-1 at 11–12). More specifically, Huntington states that Majestic seeks information regarding accounts that have not experienced a financial loss, that experienced a financial loss but were reimbursed, or that enlisted in Huntington's anti-fraud products—all individuals who are outside the proposed class. (*Id.* at 11–13; Doc. 47 at 8). Majestic offers no response to this argument.

It appears that these deposition topics may be relevant in some respects, but Majestic surely could obtain this information in a more efficient manner, such as propounding interrogatories. *See Smithkline Beecham Corp.*, 2000 WL 116082, at *9. Indeed, to require an

individual representative to testify about the identity of potentially thousands of accounts is not proportional to the needs of this case. Consequently, to the extent Topics 19, 30, 31, 32, 33, 34, 35, and 36 seek specific names and account numbers, Huntington's request for a protective order is granted. Majestic may, however, inquire about the total number of accounts that exist for each category.

### iii. Type of Fraud (Topics 5–7, 10, 12, 14, 16, 18, 26, 29, 32–38)

Huntington also seeks a protective order preventing its corporate representative from testifying on types of bank fraud other than the type of check fraud at issue in this case. Majestic defines "Fraud" in the Deposition Notice as having the same "meaning assigned by Huntington in its Rule and Regulations for Business Accounts," and appears to encompass all types of frauds perpetrated on Huntington's customers. (Doc. 42-2 at 5). The term "Fraud" is used in Topics 5, 6, 7, 10, 12, 14 , 16, 18, 26, 29, 32, 33, 34, 35, 36, 37, and 38. (Doc. 42-1 at 13).

Huntington explains that, as written, certain deposition topics would require testimony on types of fraud such as that relating to ACH debits, which is part of the "funds-transfer system" and involves "a completely different Huntington department than check-based fraud." (*Id.* at 14–15). This, according to Huntington, is not proportional to the needs of the case because Majestic's causes of action are limited to issues bearing on check fraud only. (Doc. 47 at 9).

Majestic counters that the type of fraud is irrelevant to this case, and instead explains that it "is seeking to show how Huntington applies its policy of disclaiming all liability in violation of the UCC." (Doc. 46 at 11). The Court agrees with Majestic and finds that allowing inquiry into all types of fraud is still proportional to the needs of the case. Thus, in the topics at issue, the term "Fraud" shall have the same "meaning assigned by Huntington in its Rule and Regulations

for Business Accounts."  Huntington's request for a protective order to limit the definition of the term "Fraud" in Topics 5, 6, 7, 10, 12, 14, 16, 18, 26, 29, 32, 33, 34, 35, 36, 37, and 38 is denied.

<em>iv.</em>     <em>Statute of Limitations (Topics 9, 14, 16, 17)</em>

Huntington seeks a protective order limiting the timeframe specified in Topics 9, 14, 16, and 17.  (Doc. 42-1 at 15).  Those Topics seek the following information:

> 9. The following information about an Investigative Referral Form:
>     a. the format from January 1, 2010 to the present;
>     b. the training You offer about the Investigative Referral Forms from January 1, 2010 to the present;
>     c. the purpose and Your use from January 1, 2010 to the present; and
>     d. its creation.
>
> 14. Your employee training about claims for reimbursement due to Fraud made to Huntington by Business Accounts from January 1, 2010 to the present.
>
> 16. All Your Policies about reviewing and evaluating claims for reimbursement due to Fraud made to Huntington by Business Accounts from January 1, 2010 to the present.
>
> 17. Your employee training and Policies about how Huntington avoids cashing fraudulent checks from January 1, 2010 to the present.

(*Id.*).  Huntington argues that in light of the one-year contractual limitations period in Huntington's Rules and Regulations for Business Accounts (*see* Doc. 32-1 at PAGEID #: 283), and the three-year statute of limitations period under the UCC and Ohio law, this timeframe is unnecessarily broad.  (Doc. 42-1 at 15–16).  Because Majestic initiated this action in November 2015, Huntington argues that any information "dating back to 2010[] [is] more than two years before the statute of limitations ran and four years before the contractual–limitations period expired."  (*Id.* at 16).  Thus, Huntington seeks a protective order limiting the timeframe in these topics to January 1, 2012 to December 31, 2017.  (*Id.* at 17).

Majestic counters that the information being sought from 2010 is not to aid in recovery on time-barred claims.  (Doc. 46 at 13).  Instead, Majestic explains that "[t]he timeframe is

necessary to establish key facts[,]" such as "Huntington's shifts in policy, change in employee training and information on old claims for reimbursement [that] tend to show Huntington's intent, objectives, and application of its invalid policy that is relevant to Majestic's current claims." (*Id.*).

In balancing the necessity for information outside the statute of limitations with the needs of the case, the Court agrees with Huntington. *See Arenas v. Unified Sch. Dist. No. 223*, No. 15-CV-9359-JWL-TJJ, 2016 WL 6071802, at *6 (D. Kan. Oct. 17, 2016) (holding that "to avoid unnecessary burden and expense," a witness's testimony should be limited to the applicable statute of limitations); *Greene v. Sears Prot. Co.*, No. 15 C 2546, 2017 WL 1134484, at *5 (N.D. Ill. Mar. 27, 2017) ("This Court agrees . . . that plaintiffs have provided no compelling argument that discovery going back earlier than [the applicable statute of limitations] is warranted."); *Wilson v. MRO Corp.*, No. 2:16-CV-05279, 2017 WL 561333, at *2 (S.D. W.Va. Feb. 10, 2017) ("In view of the applicable limitations period for Plaintiffs' claims, and considering that the scope of discovery must be proportional to the needs of the case," the court limited the timeframe for discovery). Accordingly, Huntington's request for a protective order limiting the timeframe in Topics 9, 14, 16, and 17 from January 1, 2012 to December 31, 2017 is granted. Majestic may, however, serve written discovery on any relevant policy changes.

### 3. *Testimony on Legal Issues*

Huntington next contends that a protective order is necessary to prevent deposition questioning on Topics 1, 23, and 24, because the topics inappropriately seek legal conclusions from a lay witness. (Doc. 42-1 at 17–18). Those topics are as follows:

1. All allegations in the Complaint and Answer including any affirmative defense pled by You.

23. All facts and circumstances about Your investigation and evaluation of Your ordinary care in preventing the payment of the Unauthorized Checks.

24. All facts and circumstances about Your ordinary care in cashing the Unauthorized Checks.

(Doc. 42-2). Huntington avers that these topics "probe into Huntington's compliance with legal doctrines, asking Huntington's witness to describe Huntington's exercise of 'ordinary care,' which is a legal concept defined by the Uniform Commercial Code." (Doc. 42-1 at 17). Majestic, on the other hand, states that "[t]opics probing Huntington's compliance with its ordinary care or other legally defined terms are fully discoverable through deposition testimony." (Doc. 46 at 12). In support, Majestic cites to Rule 33(a)(2)—the rule governing interrogatories that states it is not a proper objection to an interrogatory that seeks a response related to the application of law. (*Id.*).

Huntington is correct that "a lay witness cannot testify as to legal conclusions, and such questions exceed the permissible scope of a 30(b)(6) deposition." *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 5213936, at *5 (W.D. Ky. Sept. 20, 2016) (citing *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-CV-857-TBR-LLK, 2015 U.S. Dist. LEXIS 86162, 8, 2015 WL 4068405 (W.D. Ky. July 1, 2015)). Indeed, if "testimony addresses issues with 'a separate, distinct and specialized meaning in the law different from that present in the vernacular,' it calls for an impermissible legal conclusion." *Cardinal Aluminum Co.*, 2015 WL 4068405, at *4 (quoting *Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Topics 23 and 24 seek testimony regarding "ordinary care"—a phrase that has a distinct legal meaning. Consequently, to the extent Majestic seeks testimony regarding whether Huntington exercised "ordinary care," that is a legal conclusion that exceeds the scope of permissible discovery and is not appropriate for a 30(B)(6) deposition. *See id.* However, Majestic may still

inquire as to facts relating to Topics 23 and 24—specifically, the facts surrounding Huntington's investigation and steps taken to prevent the payment of unauthorized checks. It may not, however, seek testimony as to the legal implications of this factual information; namely, ordinary care. *See id.* at *4. Thus, Huntington's request as to Topics 23 and 24 is granted in part.

Turning to Topic 1, Huntington states that "Majestic steadfastly refused to limit the topics related to 'the allegations in the Complaint and Answer, including any affirmative defense[s]' to factual issues, not legal ones." (Doc. 42-1 at 18 (citing Ex. A ¶ 1)). As explained above, a Rule 30(b)(6) notice of deposition that seeks the factual bases for another party's claims or defenses is proper. *Gen. Mills, Inc.*, 2006 WL 7276959, at *3 (citation omitted). It is unclear what type of "legal issues" Majestic might ask Huntington's representative about relating to Topic 1, but for the reasons explained above, questions involving legal implications are improper. However, consistent with the Court's above reasoning, to the extent the questions on Topic 1 are related to the factual bases of Huntington's affirmative defenses, those questions are permissible.

### 4. Duplicative & Cumulative

Finally, Huntington seeks a protective order preventing testimony on Topic 46, "[t]he drafting, use, and content of the Master Service Agreement." (Doc. 42-1 at 18–19 (citing Ex. A ¶ 46)). Huntington states that testimony on this issue would be cumulative and harassing:

> In answering Plaintiff's First Set of Interrogatories, Huntington identified three members of its in-house legal team as the drafters of the provision in the Master Services Agreement limiting Huntington's liability for fraud when customers fail to use its fraud-prevention products. Majestic insisted on subpoenaing, rather than noticing, all three lawyers for depositions despite Huntington's willingness to make them available for deposition. (Doc. Nos. 34, 37, 38.) After taking the deposition of one lawyer on February 26, 2018, Majestic unilaterally canceled the deposition of a second in-house attorney on March 2, a mere five days before the scheduled deposition and after Huntington prepared the witness to be deposed. (Ex. F at 15.) Majestic proceeded with the deposition of a third in-house lawyer on March 8.

Having taken two depositions of the witnesses most knowledgeable about the "drafting, use and content" of the relevant provision in the Master Services Agreement and unilaterally cancelling a third because Majestic believed the testimony would be duplicative, Majestic now seeks corporate testimony on the same issue. (Ex. F at 15.) Majestic has had "ample opportunity to obtain the information by discovery in this action" from the individuals Huntington specifically identified as having the most relevant knowledge. Fed. R. Civ. P. 26(b)(2)(C)(ii) (allowing a court to limit discovery when a party has had ample opportunity to obtain it otherwise).

(*Id.*).

Majestic contends it is entitled to testimony relating to Topic 46 regardless of whether fact witnesses testified on a similar topic. (Doc. 46 at 12).

"The testimony of a witness noticed as an individual does not bind an entity as a 30(b)(6) witness does." *Smith*, 2006 WL 7276959, at *5; *see also Sabre v. First Dominion Capital, LLC*, 01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637, 2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001) ("A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity."). Thus, prior deposition testimony from individual fact witnesses does not relieve a corporation "from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition." *Id.* (citing *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (imposing sanctions and fees for refusing to produce 30(b)(6) witnesses because the issuing party "had in early stages of the case already deposed the employees"); *Commodity Futures Trading Comm. v. Midland Rare Coin Exch. Inc.*, No. 97–7422–CIV, 1999 U.S. Dist. LEXIS 16939, *9–10 (S.D. Fla. July 28, 1999) (holding that Rule 30 allows deposition of witness in her individual capacity and in corporate capacity because the depositions serve distinct purposes, impose different obligations and involve different ramifications)).

There are circumstances, however, when a "party may . . . successfully argue that all or a portion of the subject matter of such a deposition has already been addressed and that prior depositions may be deemed to be the organization's response." *Prosonic Corp. v. Stafford*, No. 2:07-CV-0803, 2008 WL 2323528, at *4 (S.D. Ohio June 2, 2008). "[F]or example, the court in *EEOC v. Boeing*, 2007 WL 1146446 (D. Ariz. 2007) acknowledged that a corporate deponent may, in response to a 30(b)(6) notice, designate prior depositions as responsive and offer to be bound by the testimony given in those depositions in lieu of having to produce the same witnesses to answer the same questions again." *Id.* This intent, however, must be clearly indicated as part of a response to a 30(b)(6) notice, "so that opposing counsel (and, if necessary, the Court) can evaluate whether the prior testimony is sufficiently on point to make a subsequent deposition superfluous." *Id.* Huntington, however, has indicated no such intent. Accordingly, Huntington's request as to Topic 46 is denied, and its representative must be prepared to answer questions on this topic.

### C. Huntington's Request for Fees and Costs

Under Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." A court "must enforce this duty and impose an appropriate sanction— which *may* include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added); *In re: Modern Plastics Corp.*, 890 F.3d 244 (6th Cir. 2018). Rule 45(d)(1) does not, however, mandate attorney's fees; rather, an award of fees is within the Court's discretion. *United States v. Real Prop. Located at 36695 Clarita, Livonia, Michigan 48152*, No. 15-12679, 2015 WL 6437214, at *2 (E.D. Mich. Oct. 22, 2015) (citing *Muslim Cmty. Assoc. of Ann Arbor v. Pittsfield Twp.*, No. 12-10803, 2015 WL 5132583,

at *3 (E.D. Mich. Apr. 24, 2015)). The Court does not, in its discretion, find that an award of attorney's fees is warranted here. Among other reasons, the Court comes to this conclusion because Huntington's Motion is granted only in part. Thus, Huntington's request for reasonable fees and costs in seeking a protective order is **DENIED**.

## IV.    CONCLUSION

For those reasons, Majestic's Motion for Leave to File Second Amended Complaint (Doc. 48) is **DENIED** and Huntington's Motion for Protective Order (Doc. 42) is **GRANTED in part and DENIED in part**. Huntington is **ORDERED** to produce a corporate representative or corporate representatives to appear and testify on various topics in accordance with the limitations described in this Order. The parties are further **ORDERED** to meet and confer over the next seven (7) days to set an appropriate and convenient date and time for the deposition. Finally, Huntington's request for reasonable fees and costs is **DENIED**.

IT IS SO ORDERED.


Date:  July 10, 2018                                    /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE